CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 19 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GREGORY ALLEN OSBORNE, | ) | Criminal Action No. 1:07CR00057 |
| Petitioner, | ) | |
| | ) | <u>2255 MEMORANDUM OPINION</u> |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. James C. Turk |
| Respondent. | ) | Senior United States District Judge |

Gregory Allen Osborne ("Osborne"), a federal inmate proceeding <u>pro se</u>, brings this action as a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Osborne asserts that his counsel was ineffective in a number of respects, resulting in a sentence which was too severe. Respondent filed a motion to dismiss, to which Petitioner Osborne responded, making the matter ripe for disposition. Upon review of the parties' arguments and the case record, the Court finds that Osborne waived his right to pursue a § 2255 motion and, therefore, the United States' motion to dismiss must be **GRANTED**, and Osborne's motion to vacate his sentence under § 2255 must be **DENIED**.

**I. Background and Procedural History**

On September 27, 2007, Osborne was charged in a two count Indictment with possession with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), and with conspiring to engage in the same, in violation of 21 U.S.C. § 846. Osborne entered into a plea agreement with the U.S. Attorney on February 4, 2008. At a hearing in front of United States Magistrate Judge Pamela Sargent on February 12, 2008, Osborne pled guilty to both counts of the Indictment and Judge Sargent recommended that Judge Glen Williams accept the guilty plea. On April 24, 2008, Judge Williams sentenced Osborne to a prison term of 70 months on each

count, to run concurrently. On April 13, 2009, Osborne filed the instant § 2255 motion. The United States moved to dismiss the § 2255 motion on September 23, 2009 and Osborne responded on October 14, 2009.

## II. Standards of Review

### A. Motion for Summary Judgment

The United States' motion to dismiss must be treated as a motion for summary judgment. The United States submitted materials outside of the pleadings, including transcripts, the plea agreement signed by petitioner, and an affidavit from petitioner's former counsel. Osborne did not include further exhibits in his opposition brief or any filing.[1] When a motion to dismiss is submitted with additional affidavits or documents outside the pleadings, the Court may consider it a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. PRO. 12(d).[2] In reviewing a motion for summary judgment, the court views the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Nevertheless, the courts look to the affidavits and other specific facts to determine whether there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Moreover, it is the substantive law that will identify which facts are material for the purposes of summary

---

[1] As demonstrated infra, the court finds that an evidentiary hearing is unnecessary because the claims in the petition can be resolved on the basis of the present record. Rule 8 of the Rules Governing § 2255 Cases in the United States District Courts specifically contemplates that the availability of an evidentiary hearing in a § 2255 petition will be determined by reviewing "the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7." RULES GOVERNING § 2255 PROCEEDINGS, RULE 8(a).

[2] The parties received reasonable and explicit notice of the court's intention to convert the United States' motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on September 24, 2009, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." (Dkt. No. 65).

judgment. Id. at 248. Ultimately, summary judgment is only proper where "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c).

**B.     Section 2255**

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. See United States v. Frady, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Under § 2255, a prisoner in federal custody may challenge his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir.1958).

### III. Analysis

**A.     Osborne Has Waived His Right To File A § 2255 Collateral Attack**

The plea agreement that Osborne signed on May 9, 2007 contained a waiver of the right to collaterally attack the judgment and sentence entered by the Court. "I further agree to waive my right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon me by the Court." Plea Agr. Par. 9. Generally, such waivers of collateral attack rights have been upheld by every Circuit Court of Appeals to consider the issue, so long as the waiver is knowing and voluntary. See Garcia-

Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001); United States v. Cockerham, 237 F.3d 1179 (10th Cir. 2001); De Roo v. United States, 223 F.3d 919 (8th Cir. 2000); Watson v. United States, 165 F.3d 486 (6th Cir. 1999); Jones v. United States, 167 F.3d 1142 (7th Cir. 1999); United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994); United States v. Abarca, 985 F.2d 1012 (9th Cir. 1993). In this Circuit the rule is the same. "A criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Moreover, this Court would be remiss not to note that public policy supports the general enforcement of waivers. The Fourth Circuit has consistently found that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The fact that the instant case involves the waiver of the right to file a habeas petition should not be "distinguished in any way from other fundamental constitutional rights that defendants are permitted to waive." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D.Va. 2005). Enforcing this waiver in the context of plea negotiations serves "the government's interest in avoiding both the expense and uncertainty of further litigation." Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001). Similarly, the defendant "characteristically receives important benefits as well...[i.e.] exemption from prosecution from other crimes, the government's stipulation to an acceptable Guidelines range, and the government's agreement that it would not seek upward departures or adjustments beyond that range." Id. Permitting a collateral attack by the defendant, however, would at least partially destroy the benefits that the government sought with the plea agreement. Accordingly, the burden is on the petitioner to demonstrate why this waiver should not preclude his collateral attack on his sentence.

4

To avoid the preclusive effect of this waiver in the plea agreement, Osborne argues that his waiver was not knowing or voluntary. Osborne specifically alleges that his waiver was not knowing and voluntary because the alleged infringement of his constitutional rights, i.e. the alleged ineffective assistance of counsel, arose after his signing of the plea agreement. Accordingly, Osborne asserts that he could not have knowingly waived his right to complain of this constitutional deprivation because he had not yet suffered it. Osborne's argument is not without significant rhetorical, and some precedential, support. See United States v. Attar, 38 F.3d 727 (4th Cir. 1994) ("Nor do we think such a defendant can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations.")

Nevertheless, for the reasons that follow, the Court concludes that Osborne's waiver was both knowing and voluntary and his ineffective assistance of counsel claim does not fall within any exception to this waiver. This Court finds that there is no dispute of material fact on this matter, and that, with respect to Osborne's arguments, the government is entitled to judgment as a matter of law. Thus, Osborne's § 2255 action has been waived and the Court will not hear his challenge.

### 1) The Scope Of A Petitioner's § 2255 Waiver Is Not Without Limits

First of all, regardless of whether a petitioner has waived his right to collaterally attack the judgment imposed, courts throughout the country have held that ineffective assistance of counsel can destroy the knowing, voluntary, and intelligent nature of the plea agreement, and

5

thus vitiate the effectiveness of the waiver. See Hill v. Lockhart, 474 U.S. 52, 55 (1985) ("A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [constitutionally insufficient].") (*quotations omitted*); United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2002) (suggesting that the "scope and effect of §2255 waiver...based on counsel's ineffectiveness with regard to negotiation of plea" would be open to challenge irrespective of fact that § 2255 waivers are generally valid); United States v. Cockerham, 237 F.3d 1179, 1184 (10th Cir. 2001) ("It is altogether inconceivable to hold such a waiver enforceable when it would deprive a defendant of the opportunity to assert his Sixth Amendment right to counsel where he had accepted the waiver in reliance on delinquent representation.") (*quotations omitted*) cert. denied, 122 S.Ct. 821 (2002); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999) ("We reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver."); United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (recognizing in the context of direct appeal that a claim of "ineffective assistance of counsel in entering the plea agreement ... might cast doubt on the validity of the waiver"); United States v. Henderson, 72 F.3d 463, 465 (5th Cir. 1995) ("Dismissal... is inappropriate where the defendant's motion to withdraw the plea incorporates a claim that the plea agreement generally, and the defendant's waiver of appeal specifically, were tainted by ineffective assistance of counsel."). The ineffective assistance of counsel that Osborne alleges, however, occurred after his guilty plea, and Osborne does not allege that these purported constitutional violations invalidate his guilty plea. Instead, Osborne's argument is that the ineffective assistance of counsel he suffered resulted in a "wrongful sentence" that was "greater

than necessary." Pet. Memo. Pg. 2. Because Osborne does not seek to invalidate the guilty plea itself, and merely disagrees with the sentence he eventually received, the issue of the applicability of the waiver can not be so easily disposed of.

Nonetheless, it would be contrary to both reason and fundamental fairness to hold that a defendant's waiver of the right to appeal or collaterally attack a judgment would subject a defendant to later constitutional violations without recourse. The Fourth Circuit has recognized this quandary in the realm of appeal waivers, holding that "a defendant who waives his right to appeal [in a plea agreement] does not subject himself to being sentenced entirely at the whim of the district court." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Expressed generally, the Fourth Circuit has "refused to enforce appeal waivers in cases that involve errors that the defendant could not have reasonably contemplated when the plea agreement was executed." United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007) (*quoting* United States v. Blick, 408 F.3d 162, 172 (4th Cir. 2005)). More specifically, the Fourth Circuit, in United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994), endorsed the Marin court's waiver exceptions that would arise when a sentence is (1) "imposed in excess of the maximum penalty" or (2) "based on a constitutionally impermissible factor such as race." Attar, 38 F.3d at 732 (*quoting* Marin, 961 F.2d at 496). Particularly relevant to Osborne's argument, however, the Attar court explicitly identified another exception: one that arises when there are allegations of a violation of the Sixth Amendment's right to counsel. Specifically, the Attar court did "not think the general waiver of appeal rights contained in this plea agreement can be fairly construed as a waiver of the right to challenge their sentences on [the] ground [that the sentencing proceedings were]… conducted in violation of their Sixth Amendment rights to counsel." Attar, 38 F.3d at 732-33. Similarly, in Poindexter, the Fourth Circuit determined that a defendant's waiver of the

7

right to appeal did not equate to the waiver of the right to the effective assistance of counsel in pursuing an appeal. Poindexter, 492 F.3d at 273. And although the issue has not been definitively resolved, the Fourth Circuit has routinely indicated that it "sees no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral attack rights in a plea agreement." Lemaster, 403 F.3d at 220 (*citations omitted*). Thus, there is support for Osborne's position that his waiver of collateral attack rights does not now preclude his challenge to his sentence based on ineffective assistance of counsel at the sentencing stage.

Moreover, Osborne's argument is strengthened by the admitted importance of the Sixth Amendment right to counsel at the sentencing stage of a proceeding. See, e.g., Mempha v. Rhay, 389 U.S. 128, 134 (1967) (holding that a criminal defendant is entitled to representation at "every stage of a criminal proceeding where substantial rights of a criminal accused may be affected"). The Fourth Circuit must, of course, follow this directive. See United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996) ("We have previously noted that sentencing is a critical stage of the trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed."). In Attar the defendants' Sixth Amendment right to counsel was violated when the court "permitted their lawyers to withdraw at the beginning of the sentencing hearing, denied their request for a continuance to retain substitute counsel, and forced them to represent themselves during the rest of the proceedings." Attar, 38 F.3d at 733.

Whereas the defendants were wholly denied the assistance of counsel in Attar, in other cases, mere ineffectiveness of counsel during the sentencing phase has been found to violate the Sixth Amendment. For example, in Breckenridge a violation of petitioner's Sixth Amendment

right to counsel was found when petitioner's counsel failed to object to an improper application of the sentencing guidelines. Breckenridge, 93 F.3d 132. See also United States v. Beatty, 35 F.3d 557 (4th Cir. 1994) (unpublished table decision) (stating that "failure of Beatty's trial counsel to file written objections to the presentence report constitutes ineffective assistance of counsel warranting resentencing"). This is consistent with other jurisprudence addressing the importance of effective representation during sentencing. See Glover v. United States, 531 U.S. 198 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance" while evaluating prejudice prong of Strickland); United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995) (remanding for evidentiary hearing on alleged deficient performance of counsel in investigating type of methamphetamine involved during sentencing phase).

In fact, the precise issue that Osborne's petition presents has been decided in his favor by several District Courts within the Fourth Circuit. See Harper v. United States, ___ F.Supp.2d ___, 2009 WL 3245452, *5 (N.D.W.Va. 2009) ("Claims for ineffective assistance of counsel, for actions taken after a defendant's entry into a plea agreement, are not waived by a general waiver of appeal rights contained in a plea agreement."); Moon v. United States, 181 F. Supp. 2d 596, 603 (E.D.Va. 2002) ("The court finds that petitioner's ineffective assistance of counsel at sentencing [lies] outside the scope of the waiver."); Butler v. United States, 173 F. Supp. 2d 489, 494 (E.D.Va. 2001) (stating that "a § 2255 waiver should not bar ineffective assistance of counsel claims...just as direct appeal waivers do not bar those claims").

2) Waiver Extends to Claims of Ineffective Assistance of Counsel At Sentencing

Although district courts in the Fourth Circuit have opined on the matter, the issue as presented by Osborne's petition, whether a collateral attack based on the ineffective assistance of counsel during sentencing will survive an otherwise valid waiver of the right to collaterally

attack a sentence, remains unresolved in the Fourth Circuit. See Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D.Va. 2005) ("District courts within the Fourth Circuit have come to different conclusions about whether a defendant who has validly waived his right to bring a § 2255 motion can later bring an ineffective assistance of counsel claim under § 2255."). In United States v. Lemaster the district court held that Lemaster had waived claims that counsel was ineffective for, among other things, (1) "failing to object to the presentence report as directed by Lemaster," (2) failing to request a "downward departure based on Lemaster's diminished capacity," and (3) failing to request a "downward departure based on Lemaster's deteriorating medical condition." Lemaster, 403 F.3d at 219 n.1. The Fourth Circuit refused to reconsider any of these claims because "none of [these claims] relate to the voluntariness of his plea agreement or waiver of collateral-attack rights." Id., 403 F.3d at 219. Thus, although Lemaster is oft cited for the proposition that there is "no reason to distinguish between waivers of direct-appeal rights and waivers of collateral attack rights," in fact, the Lemaster court breaks with the Attar court's holding with respect to the effectiveness of waivers on challenges based on Sixth Amendment violations during the sentencing phase. Id., 403 F.3d at 220 n.2. Although the Lemaster court does not explicitly note this discrepancy, their characterization of the holding from Attar highlights the basis for their decision: "holding that a general waiver of appellate rights could not be construed to bar a defendant from raising a claim that he had been *wholly deprived of counsel* during his sentencing proceedings." Id. (*citing* Attar, 38 F.3d at 732)(*emphasis added*).[3]

---

[3] An additional Fourth Circuit panel was also concerned with the import of Attar, and, therefore, chose to characterize the holding as merely consistent with the proposition that ineffectiveness of counsel will invalidate a plea agreement if it calls into question the "knowing and voluntary" nature of the plea. See United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) (*citing* Attar, 38 F.3d at 732-33) (characterizing Attar as holding that "[a] valid appeal waiver does not bar review of a [Six]th Amendment challenge to *plea proceedings*")

District court decisions have seized on this distinction as the basis for decisions that hold waivers of collateral attack rights to be valid and effective. See Braxton, 358 F. Supp. 2d at 502 (stating that "claims of ineffective assistance of counsel...should not be treated identically for direct appeal and § 2255 waiver purpose... [thus] the waiver exception recognized in Attar applies only to a very narrow category of cases"); Moore v. United States, 2007 WL 853822, *5 (W.D.Va. 2007) (unreported decision) ("Moore's claims are not analogous to a claim that he was wholly deprived of counsel at sentencing under Attar, so as to bring his claim outside the scope of his valid waiver."); Crews v. United States, 2006 WL 897219, *6 (E.D.Va. 2006) (unreported decision) (same). This Court agrees with the legitimacy and significance of this distinction. Ineffective assistance of counsel claims are rarely heard on direct appeal; they "should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Thus, the ineffective assistance of counsel claims heard on direct appeal are only those failures of counsel obvious without a searching inquiry; effectively, a failure of counsel so egregious as to be equivalent to a complete deprivation of counsel. The Braxton court points out that ineffective assistance of counsel claims in habeas petitions are much more nebulous: "most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review." Braxton, 358 F.Supp.2d at 502. If collateral attack waivers could not bar the Sixth Amendment challenges that do not amount to a complete deprivation of counsel, then the waivers could be sidestepped by every petitioner who framed their habeas challenge as stemming from the ineffective assistance of counsel.

---

(*emphasis added*). This Court does not agree with this characterization, and reads Attar as specifically focused on the *sentencing phase* of the proceedings.

11

The potential for an ineffective assistance of counsel exception to the collateral attack waiver destroying the usefulness of the waiver is, therefore, quite clearly apparent. "If all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack merely by challenging the attorney's failure to achieve the desired result." United States v. White, 307 F.3d 336, 344 (5th Cir. 2002). See also Braxton, 358 F. Supp. 2d at 502 (stating that "such an exception would render all such waivers virtually meaningless"). Many courts have, accordingly, characterized attempts by petitioners to advance these ineffective assistance of counsel claims as mere camouflage for the explicit avenues of collateral attack that they have admittedly waived. See Mason v. United States, 211 F.3d 1065, 1068 (7th Cir. 2000) (upholding trial court's conclusion that petitioner's collateral attack rights were waived and that his "claim of ineffective assistance of counsel is nothing more than a challenge to his sentence"); United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) ("garden-variety attacks on his sentence…raised in the guise of a claim of ineffective assistance of counsel [were] exactly the sort of claims he knowingly and voluntarily waived"); United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (in determining scope of appeal waiver, stating that "despite his effort to dress up his claim as a violation of the Sixth Amendment, Pepshi in reality is challenging the correctness of his sentence under the Sentencing Guidelines"); Moon, 181 F. Supp. 2d at 602 n.3 (reaching contrary conclusion, yet noting the need to "deter future defendant[s] from using this exception to make a thinly veiled attack on the sentence imposed on him or the application of the guidelines to him"); Crews, 2006 WL 897219 at *7 ("petitioner's vague and sweeping claim of ineffective assistance compared to his detailed attacks on his sentence indicates that Petitioner's true complaint is with his sentence, which is precisely the type of complaint that the petitioner waived"). This matter is complicated further

by the fact that the majority of these cases may well require a Strickland analysis more demanding and intrusive than most run-of-the-mill ineffective assistance of counsel claims.[4]

This Court has considered, but is not overly concerned with, the potential danger of individuals receiving ineffective assistance of counsel post-plea agreement. Importantly, there are other ways to protect the rights of defendants from the ineffective assistance of counsel following the acceptance of the plea agreement. First of all, Attar's Sixth Amendment exception to waivers of the right to appeal would still be applicable. Egregious errors or failures by counsel would still be reviewable on direct appeal as long as "the record conclusively shows ineffective assistance." King, 119 F.3d at 295 (4th Cir. 1997). For example, the ineffective assistance of counsel alleged in Breckenridge, specifically the failure to object to the improper application of the sentencing guidelines, would be cognizable on direct appeal since the record

---

[4] In order to successfully challenge a sentence on the basis of ineffective assistance of counsel, a petitioner must satisfy the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), where the United States Supreme Court held that a finding of ineffective assistance of counsel requires a two-prong showing of both deficient performance by counsel and prejudice resulting from that deficient performance. Id. at 687. Failure to satisfy either prong is fatal to a petitioner's claim, so "there is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. Commonly, defendants are unable to show prejudice, and "[i]f [a] defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992) (*citing* Strickland, 466 U.S. at 697). See also, Williams v. Taylor, 529 U.S. 362, 414 (2000) ("In the vast majority of cases...[t]he determinative question – whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different – remains unchanged"). To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Strickland, 466 U.S. at 694. But more recently the Supreme Court has explained that "[our] authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice[;] quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (2001). Applying Glover in the context of collateral attacks on the ineffective assistance of counsel at sentencing would reduce the Strickland test to the first, more rarely analyzed, prong – an evaluation of the attorney's performance. Additionally, when judicial scrutiny of the performance of counsel is required, it is often done in the context of trials, where the reviewing court can be "highly deferential" to tactical decisions and wary of the "distorting effects of hindsight." Strickland, 466 U.S. at 689. At the sentencing phase, however, tactical decisions are almost entirely absent and courts, in addressing collateral attacks alleging ineffective assistance of counsel, would be forced to evaluate all of counsel's decisions and hold them to a "objective standard of reasonableness." Id. at 687-88. Were this Court to hold that ineffective assistance of counsel claims may evade otherwise valid waivers of collateral attack rights, it would permit a flood of habeas petitions seeking to evaluate every attorney's performance at the sentencing phase by subjecting them to an ill-defined "objective standard of reasonableness." This Court hesitates to so hold.

clearly shows ineffective assistance. See Breckenridge, 93 F.3d at 138 (stating that "trial counsel's failure to argue before the sentencing judge that the Charlottesville offenses were related constituted inadequate representation," because it resulted in a sentence imposed in violation of USSG § 4A1.2(a)(2)). Second, a plea agreement might specifically preserve this ground for collateral attack. See United States v. Hoyle, 33 F.3d 415, 418 (court determined that the defendant agreed to waive the right to contest either the conviction or the sentence in any post conviction proceeding "...on any grounds other than ineffective assistance of counsel"). See also United States v. Brown, 181 F.3d 92 (4th Cir. 1999) (table); United States v. Garrison, 81 F.3d 152 (4th Cir. 1996) (table).

This Court, therefore, holds that alleging ineffective assistance of counsel during the sentencing phase is not a general exception to an otherwise valid waiver of the right to collaterally attack a sentence. Accordingly, if no other exception to the waiver is found, Osborne's waiver of the right to collaterally attack his sentence must be enforced.

### 3) Osborne's Allegations Do Not Merit Any Other Exception To Waiver

First of all, Osborne has not asserted that the entirety of his guilty plea should be invalidated because ineffective assistance of counsel rendered his plea agreement involuntary and unknowing. Cf. United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (requiring evidentiary hearing on matter when "extraordinary circumstances" occurred, including both "a defendant relying on mistaken advice from constitutionally ineffective counsel" and a "Rule 11 colloquy that also fails to negate the erroneous advice provided by the constitutionally ineffective counsel"). Osborne asserts merely that he received a "wrongful sentence" that was "greater than necessary." Pet. Memo. Pg. 2. But this does not call into question his guilty plea. The essence of a valid guilty plea is that it represents "a voluntary and intelligent choice among

the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The Court notes that Osborne has failed to even allege that, "but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Thus, Osborne's challenge to the sentence he received under the guilty plea relies solely on the application of the Attar court's reasoning to his circumstances.

As discussed *infra*, the Court does not believe that the Attar court's ruling establishes that all allegations of ineffective assistance of counsel provide an exception to collateral attack waivers. Assuming without deciding that the Attar decision would be applicable in the § 2255 context if the petitioner had been "wholly deprived of counsel," the Court finds that the allegations by Osborne do not amount to a claim that he was completely deprived of counsel. Osborne alleges, broadly, that his defense counsel was "not properly prepared" for the sentencing hearing, and had "failed to review the facts of the case." Pet. Memo. Pg. 2. But Osborne's complaint focuses primarily on two disputed aspects of his pre-sentence report, specifically, (1) the proper characterization of Osborne's role in the conspiracy and (2) the quantity of drugs Osborne would be held accountable for, as well as the level of cooperation he had provided the Assistant U.S. Attorney. It is apparent from the face of the complaint that Osborne's true complaint is with the sentence that he received, not with the assistance of counsel. Osborne admits that his defense counsel negotiated a limit on the amount of drugs for which he would be held accountable, describing himself as "appreciative of defense counsel's efforts in that regard." Pet. Resp. Pg. 4. Yet he later claims that the same counsel was then ineffective by failing to argue at sentencing that he should be held responsible for only 1/100th

of the pre-negotiated amount.[5] Pet. Resp. Pg. 4. In asserting that counsel was ineffective by failing to make certain arguments at sentencing, and then attributing this ineffectiveness to a vague and nebulous "failure to properly prepare," Osborne betrays that the essence of his complaint is to dispute the sentence he eventually received. It is not an assertion that he was either literally, nor even constructively, "wholly deprived of counsel."[6] Although certain allegations of egregious failures on the part counsel, or allegations of complete deprivation of counsel, would prompt concern in this Court that manifest injustice might result, that is not the case here. Instead, this court views the allegations by Osborne as mere attempts to avoid the preclusive effect of his waiver – and, accordingly, is in agreement with the Crews court: "Such thinly-veiled attempts to circumvent a valid waiver should not be tolerated." Id. at *7.

The Fourth Circuit's conclusion in Wiggins is entirely appropriate in the circumstances of collateral attack: "A defendant who pleads guilty, and expressly waives the statutory right to raise objections to the sentence, may not then seek to appeal the very sentence which itself was part of the agreement." United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990). Although the precise sentence was not set forth, the procedures for determining that sentence were clearly

---

[5] Although Petitioner sometimes claims that he only possessed 50 mg of oxycodone, it appears from the record that he means to claim that he only possessed 50 pills of oxycodone (with each pill containing 80 mg). Pet. Resp. Pg. 4. If he were, in fact, claiming to have possessed only 50 mg of oxycodone, it would be less than 1/1000th of the amount (5,597 80mg pills) his lawyer negotiated in his plea agreement and the government stipulated to. Pet. Resp. Pg. 4.

[6] The Court notes that the Government included an affidavit from Osborne's counsel stating that he had "met with the Petitioner a total of 18 times;" had "reviewed the discovery materials" and later "fully reviewed the presentence investigation report [with the Petitioner]." Gov. Ex. E. None of these assertions were disputed, nor even addressed, in Osborne's response. The only allegation that Osborne made which might be susceptible to the interpretation that he has alleged being "wholly deprived of counsel" is that his attorney did not assist him, *post sentencing*, in gaining a Rule 35 motion from the Government. Pet. Resp. Pg. 4. Because the filing of a Rule 35 motion is entirely at the discretion of the prosecuting attorney, the Court refuses to consider this allegation as the basis for an exception to his § 2255 waiver. More importantly, there is no Sixth Amendment right to counsel following the final disposition of the case, with the exception of the first-tier appellate review. See Pena v. United States, 534 F.3d 92 (2d Cir. 2008).

16

established. In fact, the procedures Osborne had already agreed to allowed that "the Court is not bound by any recommendation or stipulation and may sentence me up to the statutory maximum" without any recourse if "the Court disregards the stipulations and/or recommendations set forth in the plea agreement." Plea Agr. Par. 4. Osborne's petition is aimed at challenging the precise extent of his sentence, one clearly within the statutory maximum. He has waived the right to challenge his sentence via collateral attack. Given the nature of Osborne's petition – a challenge to his sentence masquerading as an alleged ineffective assistance of counsel claim – the Court believes that his waiver must be given its proper effect, foreclosing the Court hearing his arguments.

### IV. Conclusion

For the stated reasons, the United States' motion for summary judgment (Dkt. No. 64) is **GRANTED** and Osborne's 28 U.S.C. § 2255 Motion (Dkt. No. 47) is **DENIED**. An appropriate order shall issue this day.

Osborne is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability pursuant to § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Based upon the court's finding that Osborne has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Osborne intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of

appeal with this court within 60 days of the date of entry of the final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

**ENTER:** This 19th day of January, 2010.

/s/ James C. Turk
Senior United States District Judge